Good morning everyone. We're pleased that everyone made it on this frigid day and we promise we'll give you a warmer reception. We're ready to start with the  hearing. May it please the court. Good morning your honors. My name is Greg Heinen and I'll be speaking this morning on behalf of defendant appellant Sharon Anzaldi. I'd like to address the court today on one of the two issues that we raised in our briefs. Ms. Anzaldi's competency. My client's conviction should be reversed and this case should be remanded for a competency examination and a new trial because ample evidence provided reasonable cause to doubt Ms. Anzaldi's competence to stand trial and to represent herself at trial. Despite this evidence not a single finding regarding Ms. Anzaldi's competence was made in this case. No competency exam was held and no hearing was conducted. Both an abundance of caution regarding the competency of a pro se defendant and a deeper inquiry into Ms. Anzaldi's competency to stand trial and to represent herself at trial were warranted here. Compelling evidence before the court that Ms. Anzaldi lacked the ability to assist in her own defense which should have prompted findings and an examination included Ms. Anzaldi's pre-trial hearings. That's not uncommon with a pro se defendant. Certainly true Your Honor. However those nonsensical statements and filings prompted the government on three separate occasions both in a written motion and twice renewed at pre-trial hearings to request that a competency examination be held to determine. They were protecting their record. I'm sorry Your Honor. They were protecting their record. Your hearings that she was incompetent at least to represent herself if not to stand trial. However the government's motion was never squarely addressed by the district judge and no competency hearing was held. As the trial proceeded additional evidence existed that Ms. Anzaldi may have in fact been incompetent. She demonstrated a complete inability to organize a coherent defense as she represented herself at her own trial. Her own witnesses revealed that Ms. Anzaldi had become increasingly paranoid. Spoke about how she feared that her phone was being tapped. Spoke about from her own children, Alicia and Robert Anzaldi, how she had exhibited increasing paranoia and a lack of touch with reality. And after all of this evidence and all of these motions. How is the lack of touch with reality manifested? That was from testimony from her children Your Honor. Yeah but by what actions? And what was it, they must give me some concrete instances. Well the testimony did not point to a specific instance. It just mentioned, made those statements but at trial I would point to several statements by Ms. Anzaldi. One of the first things she said to the court was that she was appearing in the flesh by the way. She consistently made statements regarding congressional record HJR 192 and began her opening statement by saying that of course everyone knows that the United States is operating under bankruptcy and that there's no money. She completely denied that such a thing as criminal intent existed, insisting that all crimes were civil. And these and many other statements indicated to the court and to the jury. How does that signify a break with reality rather than just a gross misunderstanding of basic civics? And you know, it's just part and parcel of that sovereign citizen movement that these ideas are perpetuated and she held them but that doesn't suggest that she suffered from a mental disease or defect that made it impossible for her to understand what was going on. Respectfully, I disagree, Your Honor, that it necessarily means that she didn't suffer from a mental disease or defect. This court has clearly held in James and Jonathan, for example, that simply articulating strange legal beliefs is not evidence of incompetence. However, logically there must be a point on the continuum or there must be certain criminal defendants that exhibit or hold strange, ludicrous legal positions and those legal positions stem from a mental disease or defect. The problem in this case is that we have no indication, no findings, no examination, no hearing to ensure that Ms. Insaldi was indeed competent. And we have a wealth of evidence, including comments from standby counsel and the district judge that indicate that they may have harbored concerns about her competence. Well, the standby counsel never indicated that he thought she ought to have a competency exam, did he? Correct, Your Honor. And when that point was raised at a pretrial hearing, he objected to holding such a hearing at that time. However, I think it's revealing if we look at standby counsel's comments at sentencing, how his perspective may have changed. When he addressed the court at sentencing, he said that Ms. Insaldi was a prisoner of her ideas. She said that she didn't listen to him, didn't listen to the judge, didn't listen to anything but what goes on in her mind. Well, but here he's arguing for a lower sentence, right? Correct, Your Honor. However, he said that he had... He never said she was not competent to be sentenced. He did not say that explicitly, but he did say that he had looked up Ms. Insaldi's behavior in the Journal of Psychiatric Diseases because he was concerned about what went on here. And he ascribed words to her behavior and her conduct, such as delusional and idea fixation. But he didn't make any requests at that point for a competency exam, did he? He did not, Your Honor. He did not, and he had the ability, because he was appointed standby counsel, to request to the court that she undergo a competency exam at that time. That's correct, Your Honor. And he did not make such a request. That's correct. However, his failure to do so is not dispositive of Ms. Insaldi's competency, as the statute requires that the district judge order such a hearing on its own motion, even if neither party has requested a hearing. And in addition, the Johns case from this court, I would submit, indicates that standby counsel's comments and perceptions of his client, while no doubt important, are not dispositive. As in the Johns case, the court asked Ms. Johns' appointed counsel his opinion of his client's competence. He responded that his client was competent in his estimation. And on appeal, this court reversed the district court's determination and ordered a retrospective determination of Ms. Johns' competency. Of course, the district court, who had the authority to order the exam at any point, never did, and saw your client throughout the proceedings. Correct, Your Honor. And the district judge's observations, as the government points out, are entitled to significant weight. However, I think it's revealing that in the government's brief, the government neglects to cite any actual observation by the district judge. I think that's revealing because there were no such observations that squarely pointed to a determination by the district judge that Ms. Insaldi was, in fact, competent. And the district judge made comments, for example, in pretrial. He said that the filings that she had made showed that her level of understanding was such that she might be in some peril without actual legal representation, and further commented at sentencing that he didn't know whether she was delusional or not, and whether the filings and statements that she had made or the actions that she had made were related to delusions or to greed or to one or the other. These comments may have revealed that the district judge had doubts as to Ms. Insaldi's competence. But unlike many of the cases that we've cited in our briefing, we simply have no findings, no judicial determination in the record here that can let this court be confident that Ms. Insaldi was, in fact, competent to stand trial. It's my understanding from the record that the issue was raised in the context of suggestions that she may not be competent to represent herself, not so much that she was not competent to stand trial. Your Honor, I believe that's correct in that the government's motion seems to indicate that they're requesting a competency exam to determine her competency to proceed pro se. However, in the government's own motion, they acknowledge that that standard is the same standard as competence to stand trial. It's the Dusky Standard. And the Supreme Court's decision in Indiana v. Edwards indicates that the standard to represent yourself at trial, while perhaps governed by the same test, is a higher standard. It's a higher bar to satisfy. Well, I'm not sure that's what that case held. The case holds that states can impose a higher standard for self-representation and override the defendant's Faretta right to self-representation without violating the Constitution, not that the law mandates a different standard or a higher standard if the defendant chooses to exercise his right to represent himself at trial. Your Honor, respectfully, I would disagree in that. Edwards indicates that there's a gray area. The Court uses that phrase in the opinion. Right, but it doesn't establish a higher standard or a different standard. It just acknowledges that the evaluation may be different and states are free to adopt a higher standard, as Wisconsin has done, for example. Correct, Your Honor. I think what the Court in Edwards implies, though, is that certain competency to complete certain tasks, including representing yourself at trial, requires more than simple competence to stand trial. So although Edwards, as this Court noted in Jonathan, doesn't require an additional inquiry into the competence of every pro se defendant, it should indicate to district judges to be additionally cautious when confronted with a pro se defendant where that litigant's competency is raised and indications abound of their incompetence, as it was in this case. If I could, I'd reserve the rest of my time for rebuttal. All right, Mr. Heinen. Thank you. Thank you. Mr. Schobot. May it please the Court, I'm going to limit my remarks this morning to the willfulness argument that we've advanced. Judge, from the beginning of this case, Your Honors, we looked at this as a tax violation. The false claims that were charged were tax returns that were filed by the various defendants. And we always viewed this as a situation in which the allegation was that there were lies told on a tax return. And instead of charging this as a tax offense, the government charged it as a false claims offense. And we think principally they did that in order to avoid the requirement that they would have had to have met had they charged this as a tax false statement case of willfulness. And we think that that was inappropriate, that it's fundamentally unfair for Congress to have said that when you submit a tax return, which you're obligated to do if you have a certain amount of income, and when you are obligated to use the tax forms that the government prepares, and there was testimony at trial, that if a taxpayer tried to file a return not using a 1040 or not using an OID 1099, that the government would not accept that return. It would be viewed as a frivolous return, an invalid return. That when this whole statutory scheme is created, and Congress has said, we're not going to hold taxpayers criminally liable unless they do so willfully, as we've defined that term as Congress, and as the Supreme Court has made clear, the Cheek Standard, a known violation of a legal duty. That when Congress did that, it gave a certain amount of protection to taxpayers that they would be immune from criminal liability unless the government could show willfulness. And yet, the government charged a 286 offense and said, we don't have to prove willfulness. This is just simply a false claim. Our view is that the false – What's the hook for your argument? Is this a constitutional argument or is this a statutory interpretation argument? No. Or just what's the legal framework? Well, we think that the statute, the false claim statute, and specifically the intent required for the false claim statute, it doesn't have to be fixed one standard in all cases. And in fact, as you read this Court's cases and other circuits' cases, some say there's an intent to defraud that's required. Some say there just has to be knowing falsity. And I think the confusion or the disagreement has arisen really because the statute seems to cover false, fictitious, or fraudulent claims. And so I don't think there has to be a uniform mental state that applies to all cases. And I think when the government bases their false claim on the filing of false income tax returns or fictitious or fraudulent income tax returns, then they must satisfy the standard that Congress has set forth for such claims, which is willfulness. As a matter of statutory interpretation or as a matter of constitutional command? Well, as I understand, it's a matter of statutory interpretation is the first point, and I think you can resolve it on that grounds. But I think underlying the requirement is the notion of there's a fundamental fairness and there is a due process concern, which in this highly regulated area, and there's no question that this OID process was confusing. There's no question that the defendants in this case saw this as a gray area. And I know that the United States viewed it as plainly frivolous, and that was their position, and they called their frivolous filing expert to say so. But even she acknowledged that most people who utilized this process were not really acting in a known violation of the law. She said there were some that were doing that. Those were sort of the leaders. And then there were most people, she said, that just simply were believing that this was actually a valid legal tax position and that they were not committing a crime. And so we think in line with that, that's how the jury should have been instructed, and that should have been the requirement of the law, and that it was unfair for the government to sort of take advantage of the whole tax filing process but then avoid meeting their requirements of proof. But your bottom line really, Mr. Schobot, is that we should read willfulness into all tax-related offenses brought under 286 and 287. I mean in some form or fashion, but willfulness is the bottom line. Yeah, that's right, Judge. Specifically when it's limited, because there are some tax frauds that don't relate solely to the filing of returns, but when it is based solely, as it is in this case, on all statements in a return, that a taxpayer is obligated to file, yes, that would be our position. I will serve the rest of my time for rebuttal. All right. Thank you. Mr. Polovin. Thank you, Your Honor. May it please the Court, my name is Andy Polovin. I represent the United States. The District Court acted properly when it decided not to hold a formal competency hearing under Section 4241 because the totality of the circumstances before the Court at every stage of the proceeding showed that Ms. Anzaldi both understood the charges against her and was able to assist in her defense. This Court has previously identified a number of factors that standing alone can establish the absence of reasonable cause under Section 4241, and those factors were present here and support the District Court's actions. For example, first, Ms. Anzaldi's lawyer told the District Court and expressed terms that a competency hearing was not necessary, and as this Court has recognized in cases like Savage, Garrett, and Collins, counsel's representations to the Court are often dispositive on the issue of whether a competency hearing is necessary. The District Court held that hearing on February 23, 2012, specifically to address whether or not there should be a competency hearing with respect to Ms. Anzaldi, and at that hearing, counsel made three different comments that supported the District Court's decision not to hold the hearing. First, counsel expressed the objective to the request for a competency hearing. Second, standby counsel told the Court that he had discussed with Ms. Anzaldi the dangers of proceeding pro se, that she understood those dangers, and that she would use standby counsel's assistance to the extent necessary. Again, direct evidence that she was able to assist in her defense. And third, that standby counsel acknowledged that he could revisit the issue of Ms. Anzaldi's competency if there was ever a reason to do so, and he never did. Despite another year and three months of proceedings, standby counsel never requested a competency hearing for Ms. Anzaldi or suggested to the Court that she did not understand the charges against her or could not assist in her defense. Of course, at sentencing, he sort of did his own analysis of what he thought her problems were. And, of course, the defense is saying the Court should have at least at that point intervened. That's correct, Your Honor. At sentencing, standby counsel made a number of references to what he called either delusional ideas or idea fixation or other psychiatric terms that he lifted out of a psychiatric textbook. What's important to note about those comments is that in every instance, they referred specifically to Ms. Anzaldi's reliance on a sovereign citizen theory and defense, and that he was advancing a similar argument at sentencing, as Judge Ripple recognized, to try and get a lower sentence, but it was a similar argument that the jury had rejected. Ms. Anzaldi presented a defense at trial where she said she honestly believed in these tax positions. And at sentencing, standby counsel made the same exact comments. The sentencing transcript actually supports the idea both that Ms. Anzaldi understood the charges against her and assisted in her defense in two other ways. One was, as the Court recognized earlier, there was no request by standby counsel or suggestion that Ms. Anzaldi did not understand the charges against her. And second, the District Court actually took a break so that Ms. Anzaldi and standby counsel could review the pre-sentence report together, come back in before the Court, and address any objections or concerns that either one of them had. And standby counsel came back in after that break and informed the District Court that Ms. Anzaldi had three objections, specific objections, to the pre-sentence report. And again, that is direct evidence that Ms. Anzaldi was able to assist in her defense. She did it before the District Court. And tellingly, she did not object to the pre-sentence report's conclusion that she had no mental illness, that she was cognizant, lucid, et cetera, nor did standby counsel. So again, before the District Court, the Court had direct evidence that she was understanding those charges against her and she was able to assist in her defense. Other evidence in the sentencing transcript confirmed that. Ms. Anzaldi apologized for her conduct. She acknowledged that some of the motions she filed were ridiculous. That's the transcript at page 22, the sentencing transcript. And again, she apologized twice for some of her actions at page 20 and 23 of the sentencing transcript. Let me address the nonsensical filings that occurred both before trial and after her conviction because the sentencing court, the District Court, listed at the start of that hearing what those nonsensical filings were. These were not the ramblings of a defendant who didn't understand the charges against her. If you Google any one of those filings that the District Court listed as things that Ms. Anzaldi had filed, you can get a verbatim template from one of these sovereign citizen defense websites where Ms. Anzaldi inserted her name and the case and the judge's name into those filings. The same is true with Ms. Anzaldi's pretrial filings. So in reply and in oral argument, Ms. Anzaldi relies on a document filed in the record at 70, which is a nonsensical filing that makes very little sense, but it is a template found by sovereign citizens that they advance routinely in cases, which, again, is something that the District Court recognized in sentencing. The court said expressly on the record that Ms. Anzaldi was not the first person to advance these theories in the District Court and that he had seen them before. So in that sense, the sentencing transcript, Your Honor, it actually supports the government's position and reinforced the District Court's action. And it's similar in a lot of ways to the court's decision in James, which is the Moorish Temple case. And what the court noted in that case is that one person with a fantastic view may be suspected of delusions, the same word that standby counsel used, but two people with identical views are just oddballs. And so in the Moorish National case, the fact that multiple people were making the same argument took it out of the realm of delusion and into the realm of a nonsensical legal theory that this court has repeatedly held in Alden, James, and Jonathan is not sufficient standing alone to require a competency hearing under Section 4241. In addition to the sentencing transcript to standby counsel's representations, Ms. Anzaldi had a number of interactions with the trial court where the issue of her competence arose, going back to the November 2011 arraignment. And at each instance, Ms. Anzaldi's interactions, again, And finally, we have Ms. Anzaldi's pro se performance at trial where she advanced a legal theory that was consistent with the other defendants. Each of them argued or attempted to argue that they did not have intent to defraud the government because they honestly believed in the tax positions that they had taken. For Ms. Anzaldi, she argued that she had performed diligent research, that the returns were filed to the best of her ability, that she attempted to file amended returns, and so on. She also tried to introduce a good faith expert who had allegedly legitimized her use of these OID tax forms. But her pro se performance, again, demonstrated that she understood the charges against her, and in this sense, the case was no different than the court's opinion in Jonathan. Because in that case, the defendant proceeded pro se on a kidnapping and rape charge, and the defendant tried unsuccessfully to call into question that he had transported his daughter across state lines. And as the court held in that case, the fact that the defendant was asking questions trying to negate an essential element of the crime reflected the fact that the defendant understood the charges that were asserted against him. And the same is true here. Ms. Anzaldi, although unsuccessful, tried to ask questions and make arguments negating an essential element of the crime. In this case, that was her intent to defraud, and that, again, revealed her understanding of the charges against her. And the record is clear that she has no history of mental illness? Yes, Your Honor. And no diagnosis, no use of psychotropic or prescription of psychotropic meds? There is no history of mental illness in this case. The record reflects that in the sentencing report. The same pages that I cited with regard to her failure to object to the sentencing officer's conclusion that she had no history of mental illness. So to require a competency evaluation on this record would essentially require it for anybody who presents this sovereign citizen defense with its various tenets that the government is illegitimate and the justice system is illegitimate and so on. That's correct, Your Honor. On this record, the court would have to revisit the holdings in Alden, James, and Jonathan and conclude that the assertion of a sovereign citizen defense,  standings alone is sufficient to create the reasonable cause under Section 4241 to require a competency hearing. And the court has already held quite clearly in those cases that that fact, standing alone, is not enough. And it's certainly not enough in this case either. Let me address briefly the Indiana v. Edwards issue because Indiana v. Edwards, as the court recognized, does not establish a higher standard for defendants who want to proceed pro se. Edwards held that a state may require a defendant who's competent to stand trial to have an attorney anyway. And there is a gray zone of defendants. But Edwards is unhelpful to Ms. Anzaldi in this case  We're in the gray zone of defendants that have been adjudged competent to stand trial. That was the premise of Edwards. And so if Ms. Anzaldi is in the Edwards realm, she has been deemed competent to stand trial. Second, Edwards talks about what is permissive, as the court held in Jonathan and again in Barry. It does not talk about what the Constitution requires. So Indiana v. Edwards is no help in this case. Well, the government took the position that a competency evaluation was appropriate in this case to determine Ms. Anzaldi's competence to represent herself, as I understand the record. It wasn't challenging her competence to proceed to stand trial, but the government's approach to this issue seemed to presuppose that there is a different standard. I think you're right, Judge. I think the government's approach in the trial court suggests that there may have been a different standard. At no time did the government articulate that there were different standards. And I think the reason that the government requested the hearing in this case, as Judge Ripple recognized earlier, was to develop the record. The government saw after the arraignment, within weeks of the arraignment, November of 2011, a pro se defendant who was going to assert a sovereign citizen defense. And in order to preserve the record and develop it fully, requested a hearing not solely on the issue of competence, but also under FRERTA to make sure Ms. Anzaldi's waiver of counsel was knowing and voluntary, and third, to ensure that Ms. Anzaldi's pro se representation would not disrupt the trial proceedings. And each time the government reiterated this issue or raised it again, it's my understanding the court conducted a colloquy with the defendant and standby counsel to explore the issue and make sure that Ms. Anzaldi had not had a break with reality. That's correct, Your Honor. So each time the government raised this issue, the district court engaged in a colloquy with Ms. Anzaldi, first at a January 10, 2012 hearing, second at a February 23, 2012 hearing, which was designed expressly. If you look in the January transcript, the court says, I'm going to hold a hearing in February to determine whether or not a competency hearing is necessary. And so the district court held another hearing in February of 2012, where he engaged in a colloquy with both Ms. Anzaldi and standby counsel. And, in fact, they resisted having such a hearing on each of those occasions. That's correct, Your Honor. For Ms. Anzaldi's part, she objected both in the January hearing and the February hearing. Standby counsel was then appointed for purposes of the February hearing. Standby counsel also objected and told the district court that his conversations with Ms. Anzaldi were both productive and informative. At that point, the issue of competency had been resolved in the district court's mind, implicitly, not expressly, unless something else manifested, as standby counsel acknowledged. We can revisit this issue down the road if we need to, but he never did and the government never did. The government filed another motion in April of 2013, immediately preceding trial, where the government renewed its request that the court ensure that Ms. Anzaldi's waiver of counsel was knowing and voluntary and that it would not disrupt the proceedings at trial. But in that April 2013 motion, the government is no longer asking about the competency issue. That issue had been resolved as of February 2012 based on Ms. Anzaldi's interactions with the district court and standby counsel's representations about her competence and the fact that he would revisit the issue if needed in the future. Let me turn now to the issue of the willfulness instruction. And the district court acted properly when it refused to instruct the jury that it had to find the defendants acted willfully in order to convict. There is simply no basis for importing a willfulness mens rea for violations of the false claim statutes in this case. The statutory text simply does not support it. As the court knows, Section 287 refers to an intent to defraud, and Section 286 is actually silent on the issue of mens rea. And as this court has recognized previously and as the Seventh Circuit's pattern jury instructions recognize, the fact that Section 286 is silent on the issue of mens rea might mean it requires an intent to defraud, but it certainly does not require willfulness. And that's made clear in the case law. The case law does not support Lattin's argument, and to adopt it here would require overruling this court's decisions in United States v. Ferguson in 1986 and United States v. Catton in 1996, and that this court has also long held that the proper mens rea under Section 287 is intent to defraud. And this court has held repeatedly that a district court that issues an instruction on intent to defraud for a violation of the false claim statutes has acted properly. Last, Your Honor, with respect to willfulness, there is no basis to rule that any tax-related crime must be brought under the tax fraud statutes or, if brought under the false claim statutes, would require a finding of willfulness. And one thing that I wanted to note was that there's no requirement that a taxpayer make a claim for a refund. And so when Lattin argues in this court that the reason that we need to apply a willfulness standard is because taxpayers are required to file tax returns and the tax code is complex and Congress has created a willfulness standard for complex issues of tax law, this was not a tax fraud case. This was a case about making false claims for refunds to the United States government. And there was no dispute that it wasn't a tax fraud case at trial because all three of the defendants acknowledged in their opening statements that this was not a case about the intricacies of the tax code because they conceded that their positions were wrong. That's the reason it was brought as a false claims case and not a tax fraud case. The last thing that I will note on this particular issue is the consequence of adopting Mr. Lattin's position, and that is that there would be a different mens rea applied to charges brought under the exact same statutory language depending on the whims of any particular district court and the crime charge. And there's simply no basis to do that. The statutory language is clear on what the appropriate mens rea is. It's intended to defraud, and there's no justifiable basis to import a new standard into the statute. For each of those reasons, we would ask the court to affirm the district court's decision in all respects. Thank you. Thank you. How much time for Mr. Heine? Mr. Heine. Thank you, Your Honor. One brief point on rebuttal, and Judge Sykes, I'd like to respond directly to your colloquy with the government's attorney. We expressly do not submit that Indiana v. Edwards requires an additional Edwards-type inquiry into the pro se defendant's competence as the court recognized in Jonathan. Rather, I think it's telling when you look at the cases cited in our brief, including Jonathan, including Barry. When a district court is confronted with a defendant that makes outlandish statements, that gives similar indications of potential incompetence as Ms. Anzaldi did, they order a competency exam, or they at least make findings on the record, engage in an extended colloquy with the defendant regarding competency. For example, in Jonathan, the district judge did so, and this court indicated that a more detailed ruling may have been desirable, even though the judge explicitly ruled that it found Mr. Jonathan competent. In this case, this case would not require the overruling or reconsideration of any other case. Competency, sorry, may I leave the briefing? Yes, certainly. In this case, Your Honor, competency is an inherently fact-specific inquiry, and based on the facts of this case and the government's repeated requests for a competency hearing, findings and a potential examination were required out of an abundance of caution toward a pro se, potentially incompetent defendant. Thank you, Mr. Hunt. Mr. Shilbert. Thank you. Just three things really quickly. The fact that Section 286 is silent on a mental state means that this court is going to be engrafting and has engrafted a mental state onto the statute. So that's far from being a reason not to apply willfulness. That's actually a reason to apply willfulness. Secondly, this court doesn't have to overrule Ferguson or Haddon or any of the other cases. As the 2012 committee notes to the pattern jury instructions reflects, the mental state that applies to 286 and 287 is not settled in this circuit. And, in fact, the opinions can be read as requiring different states intended to fraud, knowing falsity, et cetera. So it's not as if you're going to be overruling those decisions. At best, you're going to be providing clarification as to what actually is required. And there's nothing wrong in having a different mental state in a tax case or a false claim case that's based on a tax submission versus one in which there is fictitious invoices or something like that. That's probably a result of, as I've indicated, one, that Congress used different terms, false, fictitious, and fraudulent, and two, the fact that the 286 mental state is left unspecified. This court is going to have to fill that vacuum, and other courts are filling it. In a tax case, there's no reason why that cannot be filled with willfulness. Thank you. And Mr. Hyndman and Mr. Schobot, you were both appointed. We were. And we thank you for your fine and vigorous representation of your client, and certainly we thank you, counsel, for your excellent representation of the government. With that, the case is in. We'll take the case under advisement.